SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
*296 OPINION
JUSTICE DONOHUE
The Peer Review Protection Act, 63 P.S. §§ 425.1 - 425.4 ("PRPA"), provides a narrow evidentiary privilege to protect the "proceedings and documents of a review committee" conducting peer review activities by professional health care providers in conformity with its provisions. In this medical malpractice action, Monongahela Valley Hospital ("MVH") contracted with UPMC Emergency Medicine, Inc. ("ERMI") to provide staffing and administrative services for its emergency room. Both MVH and ERMI claim that the PRPA's statutory evidentiary privilege protects from disclosure the performance file of Marcellus Boggs, M.D. ("Dr. Boggs") that had been prepared and maintained by Brenda Walther, M.D. ("Dr. Walther"), who served as the director of MVH's emergency department and was Dr. Boggs' supervisor.[1] Dr. Boggs and Dr. Walther were employees of ERMI. Under the facts presented in this case and the applicable statutory language of the PRPA, neither ERMI nor MVH may claim the evidentiary privilege. ERMI is not a "professional health care provider" under the PRPA, and the performance file at issue here was not generated or maintained by MVH's peer review committee. We therefore affirm the decision of the Superior Court upholding the trial court's ruling that PRPA's evidentiary privilege has no application in this case.
In January 2011, Eleanor Reginelli was transported by ambulance to MVH's emergency department with what she reported at the time to be gastric discomfort. She was treated by Dr. Boggs. Mrs. Reginelli and her husband, Orlando Reginelli, allege that Dr. Boggs failed to diagnose an emergent, underlying heart problem and discharged her without proper treatment. Several days later, Mrs. Reginelli suffered a heart attack.
In 2012, the Reginellis filed an amended complaint containing four counts. Count I asserts a negligence claim against Dr. Boggs with respect to his treatment of Mrs. Reginelli. Count II is a claim for corporate negligence against MVH, alleging that it failed to hire appropriately trained staff, to oversee staff and to adopt adequate policies. Count III sets forth negligence claims against MVH and ERMI, contending that they are vicariously liable for the acts of their agents (ostensible and/or actual), employees and/or servants. Count IV asserts a claim for loss of consortium against all defendants. The defendants filed their respective answers and new matter. In the year that followed, the Reginellis deposed, inter alia, Dr. Boggs *297 and Dr. Walther. At her deposition, Dr. Walther testified that she prepared and maintained a "performance file" on Dr. Boggs as part of her regular practice of reviewing randomly selected charts associated with patients treated by Dr. Boggs (and other ERMI-employed emergency department physicians). N.T., 2/5/2014, at 62-63.[2] In response, the Reginellis filed discovery requests directed to MVH[3] requesting, among other things, "the complete 'performance file' for [Dr. Boggs] maintained by [Dr. Walther.]" MVH objected to production of the performance file, asserting that it was privileged by, inter alia, the PRPA.
On June 12, 2014, the Reginellis filed a motion to compel discovery directed to MVH, seeking production of Dr. Boggs' performance file. In its written reply to the motion to compel, MVH argued that "the requested items are created and used for the purpose of reviewing the services being rendered at [MVH's] emergency room and other departments and fall squarely under the protection of the [PRPA]." Reply to Plaintiffs' Motion to Compel, 6/19/2014, ¶ 14. In an accompanying brief in support, MVH further indicated that "it is difficult, if not impossible, to understand how these reports and files could not be seen as evaluating the quality and efficiency of services ordered or performed by health care providers." MVH's Brief in Opposition to Plaintiffs' Motion to Compel, 6/19/2014, at 6 (citing 63 P.S. § 425.2 ).
On August 29, 2014, the trial court granted the motion to compel, ordering that MVH produce Dr. Boggs' performance file to the Reginellis. In its order, the trial court stated that the "documentation shall remain confidential with Plaintiff's counsel, and shall not be copied or reproduced in any fashion, and in the event that [it] determines same is not relevant evidence in the case sub judice, same shall be returned to [MVH]." Order, 9/29/2014.
ERMI and Dr. Boggs[4] , who had not previously participated in the above-described discovery proceedings, filed a motion for a protective order, asserting its entitlement to claim the evidentiary privilege under the PRPA for the peer review work performed by its employee, Dr. Walther. ERMI contended that Dr. Walther created and maintained the performance file solely "on behalf of [ERMI]." Motion for Protective Order, 9/22/2014, ¶ 21. ERMI explained that while MVH has a peer review committee, Dr. Walther's work was "separate 'outside' peer review [ ] conducted by [ERMI]." Id. Moreover, contrary to the Reginellis' repeated claims that any privilege claim had been waived when ERMI provided Dr. Boggs' performance file to MVH, ERMI insisted that the performance had at all times remained in Dr. Walther's sole possession. Id., ¶ 16 ("The file at issue in the present matter was maintained solely by Dr. Walther as part of her review and evaluation of Dr. Boggs' performance."). Because the performance file had not been shared with MVH, ERMI argued that it had no relevance in this case because, first, Dr. Walther had not selected Mrs. Reginelli's file for review; and second, no claim for corporate negligence had been asserted against ERMI, and since Dr. Boggs' performance *298 file constituted a review of the work of an ERMI employee, it was irrelevant to the claim of corporate negligence asserted against MVH. Id., ¶ 22.
MVH filed a motion for reconsideration of August 29, 2014 order. Contrary to ERMI's claim that Dr. Walther created and maintained performance files "on behalf of ERMI," MVH posited that Dr. Walther's peer review work of the performance of emergency department physicians was performed "on behalf of both ERMI and MVH." Motion for Reconsidertion, 9/22/2014, ¶ 11. Similar to its initial arguments in opposition to the motion to compel, MVH argued that Dr. Walther's performance reviews were "for the evaluation of the quality and efficiency of health care services, ensuring compliance with laws and regulations and evaluating and improving the quality of health care rendered by emergency department physicians, as set forth in the PRPA." Id., ¶ 21. MVH also offered to produce Dr. Boggs' performance file to the trial court for in camera review "in order to satisfy this [h]onorable [c]ourt of the applicability of the PRPA and its prohibitions of disclosure of such information to that file at issue." Id., ¶ 22.
Before the trial court could rule on either ERMI's motion for protective order and MVH's motion for reconsideration, both entities appealed the trial court's August 29, 2014 order to the Superior Court. In an order dated September 26, 2014, the trial court granted MVH's motion to include Dr. Boggs' performance file in the judicial record under seal and to retain it under seal during the pendency of the action. In the trial court's written opinion pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure, it first ruled that any evidentiary privilege was waived when Dr. Walther and ERMI shared the documents with MVH. Trial Court Opinion, 11/24/2014, at 2 ("The PRPA privilege, like other privileges, applies only to information which remains exclusive."). The trial court further ruled that even if Dr. Walther had kept the documents exclusively to herself, "she was not employed by [MVH], and was in fact an agent of ERMI, an entirely distinct entity," and, as a result, "it is untenable that [MVH] could claim a privilege for documents that it neither generated nor maintained." Id. at 2-3.
On appeal to the Superior Court,[5] MVH reasserted its contention that Dr. Walther, as the director of emergency medical services at MVH, "is regularly involved in peer review of all of the emergency department physicians and the quality assurance process for the emergency department, on behalf of both ERMI and MVH." MVH's Superior Court Brief, 1584 WDA 2014, at 24. MVH argued that the information contained in Dr. Boggs' review file "is exactly the type of information protected from disclosure by the PRPA." Id. at 29. MVH insisted that the privilege had not been waived merely because Dr. Walther was an employee of ERMI, since ERMI contracts with MVH to provide emergency room services to MVH, and that Dr. Walther, while an employee of ERMI, is also a member of the medical staff of MVH and thus serves MVH as an independent contractor. Id. at 31. According to MVH, privileges are equally applicable to independent contractors or consultants as they are to employees as long as that independent contractor has a similar role to that of an employee, and no provision of the PRPA limits the evidentiary privilege to employees. Id. at 31-32. Given her dual roles as a member of MVH's medical staff *299 and an employee of ERMI, MVH contended that the two entities shared the PRPA's evidentiary privilege, because "the two entities are contractually bound together to provide medical services, where both entities have obligations to oversee the practice of physicians, and where both entities are, in essence, sharing the medical and managerial prowess of Dr. Walther." Id. at 33.
In contrast to MVH's arguments, before the Superior Court ERMI continued to maintain that Dr. Walther's peer review work was "created and maintained solely by Dr. Walther on behalf of her employer." ERMI's Superior Court Reply Brief, 1585 WDA 2014, at 6. ERMI also repeated its assertion that Dr. Boggs' performance file "was not reviewed by and/or disseminated to [MVH's] Peer Review Committee." Id. at 16. Rather than arguing that it shared the evidentiary privilege with MVH, ERMI insisted that ERMI and Dr. Boggs, as "as Dr. Walther's employer and as the person whose 'performance file' is to be disclosed by the Trial Court's August 29, 2014, Order," are the entities "entitled to claim protection under the [PRPA]." Id. at 25.
The Superior Court affirmed the trial court's order requiring production of Dr. Boggs' performance file. Reginelli v. Boggs , 1584 WDA 2014, 2015 WL 6456401 (Pa. Super. Oct. 23, 2015). It first concluded that ERMI was not entitled to claim the PRPA evidentiary privilege, ruling that "ERMI, as an independent contractor, is not an entity enumerated in the [PRPA] as being protected by peer review privilege." Id. at *3. The Superior Court also held that MVH could not claim the privilege based upon the trial court's factual finding that MVH "neither generated nor maintained Dr. Boggs' performance file." Id. at *2. The Superior Court further indicated that even if either party could claim an entitlement to the privilege, "ERMI shared the file with [MVH] ... [and thus] any privilege for Dr. Boggs' performance file that may have existed was destroyed via disclosure to [MVH]." Id. at *3. In so ruling, the Superior Court disagreed with ERMI's assertion that the performance file had remained exclusively in Dr. Walther's possession, and indicated that "it is apparent that ERMI shared the filed with [MVH], since the Reginellis sought the file from [MVH] and [MVH] has provided it in camera." Id.
ERMI and MVH appealed the Superior Court's rulings to this Court, each claiming an entitlement to the PRPA's evidentiary privilege with respect to Dr. Boggs' performance file.[6] Our task in this regard is *300 primarily one of statutory interpretation, which presents issues of law requiring that we exercise a de novo standard of review and a plenary scope of review. See, e.g. , Bowling v. Office of Open Records , 621 Pa. 133, 75 A.3d 453, 466 (2013). As with all questions of statutory interpretation, our object is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statutory provisions under review. 1 Pa.C.S. §§ 1921(a). The best indication of legislative intent is the statute's plain language. 1 Pa.C.S. § 1921(b).
Pennsylvania courts have recognized the laudable goal of the PRPA, which was enacted "to serve the legitimate purpose of maintaining high professional standards in the medical practice for the protection of patients and the general public" based upon the General Assembly's determination that "because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." See, e.g. , McClellan v. Health Maint. Org. of Pa. , 546 Pa. 463, 686 A.2d 801, 805 (1996) (plurality) (citing Cooper v. Delaware Valley Medical Center , 428 Pa.Super. 1, 630 A.2d 1, 7 (1993), aff'd , 539 Pa. 620, 654 A.2d 547 (1995) ); Sanderson v. Frank S. Bryan, M.D., Ltd. , 361 Pa.Super. 491, 522 A.2d 1138, 1140 (1987) ("[t]hrough these immunity and confidentiality provisions [ §§ 425.3, 425.4 ] ... the Legislature has sought to foster free and frank discussion by review organizations") (citing Steel v. Weisberg , 347 Pa.Super. 106, 500 A.2d 428, 430 (1985) ); Robinson v. Magovern , 83 F.R.D. 79, 86 (W.D.Pa. 1979) (in enacting the PRPA, the General Assembly's intent was to "encourage peer evaluation of health care provided so as to (1) improve the quality of care rendered; (2) reduce morbidity and mortality; and (3) keep within reasonable bounds the costs of health care"); see also 63 P.S. § 425.1, Historical and Statutory Notes (indicating that the PRPA is "[a]n Act providing for the increased use of peer review groups by giving protection to individuals and data who report to any review group").
In interpreting its provisions, however, we may not ignore the unambiguous statutory language of the PRPA "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Such is particularly true in the present context, since "evidentiary privileges are not favored, as they operate in derogation of the search for truth." In re Thirty-Third Statewide Investigating Grand Jury , 624 Pa. 361, 86 A.3d 204, 215 (2014). As we have stated, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." Commonwealth v. Stewart , 547 Pa. 277, 690 A.2d 195, 197 (1997) (quoting Hutchison v. Luddy , 414 Pa.Super. 138, 606 A.2d 905, 908 (1992) ). Statutory privileges reflect public policy determinations by the General Assembly, and "where the legislature has considered the interests at stake and has granted protection to certain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles." McLaughlin v. Garden Spot Village , 144 A.3d 950, 953 (Pa. Super. 2016) (quoting *301 V.B.T. v. Family Servs. of W. Pa. , 705 A.2d 1325, 1335 (Pa. Super. 1998), aff'd , 556 Pa. 430, 728 A.2d 953 (1999) (per curiam) ).
Before considering the arguments of the parties, we first set forth the provisions of the PRPA at issue here, beginning with the definition of "peer review:"
"Peer review" means the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations. Peer review, as it applies to veterinarians, shall mean the procedure for evaluation by licensed doctors of veterinary medicine of the quality and efficiency of veterinary medicine ordered or performed by other doctors of veterinary medicine with the standards set by an association of doctors of veterinary medicine and with applicable laws, rules and regulations.
63 P.S. § 425.2.
The PRPA also defines the terms "professional health care providers" and "review organization" as follows:
"Professional health care provider" means
(1) individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth, including, but not limited to, the following individuals or organizations:
(i) a physician;
(ii) a dentist;
(iii) a podiatrist;
(iv) a chiropractor;
(v) an optometrist;
(vi) a psychologist;
(vii) a pharmacist;
(viii) a registered or practical nurse;
(ix) a physical therapist;
(x) an administrator of a hospital, nursing or convalescent home or other health care facility; or
(xi) a corporation or other organization operating a hospital, nursing or convalescent home or other health care facility; or
(2) individuals licensed to practice veterinary medicine under the laws of this Commonwealth.
* * *
"Review organization" means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a veterinary review committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established by one or more State or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee or individual reviewing the professional qualifications *302 or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.
Id.
Finally, the PRPA's evidentiary privilege is set forth in section 425.4.
The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.
63 P.S. § 425.4.
We begin our analysis by considering ERMI's assertion of its entitlement to claim the section 425.4 evidentiary privilege. ERMI's contends that the Superior Court, in ruling that it is "not an entity enumerated in the [PRPA] as being protected by peer review privilege," interpreted the PRPA too narrowly. Reginelli , 2015 WL 6456401 at *3. According to ERMI, the expansive language of the PRPA establishes that the privilege protects from discovery any documents that "flow from peer review activity," and that because Dr. Boggs' performance file is the result of the peer review activities of its employee (Dr. Walther), the documentation in the file is necessarily privileged. ERMI's Brief at 23-24. In other words, "[i]f peer review activity occurs," the PRPA's evidentiary privilege applies. Id. at 24. ERMI also contests the Superior Court's ruling that it does not qualify as a "professional health care provider" under the PRPA. Although ERMI admits that it does not fit squarely within any of the twelve listed types of professional health care providers in the statutory definition, it insists that it is "close enough" to at least two of the listed categories. First, referencing subsection (i), ERMI argues that although it is not a "physician," it is a "physician organization comprised of hundreds of individual emergency medicine physicians ... that exists specifically to provide emergency medical services." Id. at 25. According to ERMI, "what matters is that ERMI delivers medical care to patients through its physicians." Id. at 26. Second, ERMI posits that it also qualifies under subsection (xi), as it is a corporation that "provides staffing and Emergency Services to hospitals," and thus "should be treated no differently than a corporate entity that physically operates a hospital." Id. at 27. In this regard, ERMI focuses on the "including, but not limited to" language in the definition, noting that in McClellan a plurality of this Court indicated that the "including, but not limited to" language in this definition *303 should be interpreted to include "persons or things of the same general kind or class as those specifically mentioned in the list of examples." Id. (citing McClellan , 686 A.2d at 805 ).
Despite its protestations to the contrary, ERMI is not a "professional health care provider" under the PRPA's definition of that term. In its brief filed with this Court, ERMI describes itself as "a physician organization comprised of hundreds of individual emergency medicine physicians ... that exists specifically to provide emergency medical services." Brief of ERMI at 25. This is accurate as far as it goes. ERMI is a business entity that provides hospitals and other health care facilities, pursuant to contractual agreements, with staff involved with the provision of emergency medical services. While it is true that a plurality of this Court in McClellan identified the provision of health care services as one requirement for a professional health care provider, McClellan , 686 A.2d at 806, the express language of the PRPA's definition provides a more fundamental requisite for qualification-that the individual or organization be "approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth." 63 P.S. § 425.2. Even if we read subsections (i) and (xi) of the definition expansively, as ERMI demands, ERMI does not meet this basic requirement. In its brief filed with this Court, ERMI does not even mention this entry level requirement, much less point to any evidence in the certified record to establish that it satisfies it. No principled reading of the definition of "professional health care provider" permits any entity to qualify if it is not approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of Pennsylvania. As such, while ERMI is an organization that is comprised of hundreds of "professional health care providers" (namely, physicians), it is not itself a "professional health care provider" because it is unregulated and unlicensed.[7]
It does not matter that the documents at issue here were generated and maintained by an employee of ERMI (Dr. Walther) during her review of the performance of another employee of ERMI (Dr. Boggs).[8] In this regard, we agree with the well-reasoned decision of the Superior Court in *304 Yocabet v. UPMC Presbyterian , 119 A.3d 1012 (Pa. Super. 2015). In that case, the defendant hospital asserted the PRPA's evidentiary privilege with respect to investigative reports prepared by, inter alia, the Pennsylvania Department of Health. The Superior Court affirmed a special master's decision that the documents were not entitled to protection from discovery under the PRPA, indicating that the Department of Health was not a "professional health care organization" because it "was not [an] organization[ ] approved, licensed, or otherwise regulated to practice or operate in the health care field." Id. at 1022. The Superior Court further rejected UPMC Presbyterian's contention that the Department of Health qualified as a professional health care provider because its investigation was conducted by its employee doctors and nurses who themselves qualified as professional health care providers. Id. at 1023. The Superior Court held that "an entity that is not itself a professional health care provider does not become one merely because it hires a professional health care provider to conduct its investigation," ruling that the Department of Health "is a fictitious entity that can only operate through its agents and employees," and that the "qualifications of a person hired by the Department of Health does not alter either what it does or its purposes." Id.
In the present case, ERMI does not qualify as a professional health care provider under the PRPA because it is not approved, licensed or otherwise regulated to practice or operate in the healthcare field in Pennsylvania, and it did not become one because one of its employees (Dr. Walther) conducted an evaluation of another of its employees (Dr. Boggs). Accordingly, we affirm the Superior Court's determination that ERMI was "not an entity enumerated in the [PRPA] as being protected by peer review privilege." Reginelli , 2015 WL 6456401 at *3.
We turn next to MVH's contention that it, unlike ERMI, is a professional health care provider and is thus entitled to claim the PRPA's evidentiary privilege. MVH argues that the Superior Court erred in concluding that the documents in question were not "generated nor maintained" by MVH because Dr. Walther was not employed by the hospital, since Dr. Walther is the medical director of its emergency department and a member of its medical staff. MVH's Brief at 14. MVH contends that a "performance review by one member of a hospital's medical staff of the performance of another member of the hospital's medical staff is precisely the kind of review" that should qualify for protection under the PRPA. Id. at 15 (citing, e.g., Sanderson, 522 A.2d at 1139 ). According to MVH, physicians who hold staff privileges, but are not employed by a hospital, nevertheless serve important administrative functions, and hospitals, which routinely contract with independent physician groups (like ERMI), could not function without them. Id. at 16.
We cannot agree with these arguments. As discussed above, the PRPA's evidentiary privilege is reserved only for the "proceedings and documents of a review committee [.] 63 P.S. § 425.4 (emphasis added). MVH does not contend that Dr. Walther was a member of the hospital's peer review committee, and the certified record contains no evidence to support such a finding. Instead, MVH argues that Dr. Walther acted, ostensibly, as a "separate" peer review committee for the ERMI-supplied emergency department physicians. MVH's Brief at 13. Although Dr. Walther is an individual rather than a committee, MVH contends that this is a distinction without a difference, as the second sentence of the definition of "review organization" refers to any "hospital board, committee or individual reviewing *305 the qualifications or activities of its medical staff or applicants for admission thereto." 63 P.S. § 425.2 (emphasis added). Relying upon the Superior Court's decision in Troescher v. Grody , 869 A.2d 1014, 1022 (Pa. Super. 2005), MVH insists that a "review organization" is any "entity or individual engaged in peer review," as the PRPA uses the terms "committee" and "individual" interchangeably. MVH's Brief at 13-14.
Contrary to MVH's contention, the PRPA does not use the terms "committee" and "individual" interchangeably.[9] If the two terms were interchangeable, the reference to both ("committee or individual") in the second sentence of the definition of "review organization" would constitute unnecessary surplusage, which is not permissible under basic statutory construction principles. See, e.g., Burke by Burke v. Independence Blue Cross , --- Pa. ----, 171 A.3d 252, 260 (2017) ; see also 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Moreover, and more importantly, the terms "review committee" and "review organization" are not interchangeable, as they connote distinct types of entities under the PRPA. The first sentence of the definition of "review organization" defines the type of entity that constitutes a "review committee," namely, "any committee engaging in peer review." 63 P.S. § 425.2. The second sentence, in contrast, contains no reference to peer review, and instead refers to a "hospital board, committee or individual" involved in the review of "the professional qualifications or activities of its medical staff or applicants thereto" by a "hospital board, committee or individual."[10] Id. This second category of "review organizations" does not involve peer review, as that term is defined in the PRPA, which is limited to the evaluation of the "quality and efficiency of services ordered or performed" by a professional health care provider. Review of a physician's credentials for purposes of membership (or continued membership) on a hospital's medical staff is markedly different from reviewing the "quality and efficiency of service ordered or performed" by a physician when treating patients. Accordingly, although "individuals reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto," 63 P.S. § 425.2, are defined as a type of "review organization,"[11] such individuals are not "review committees"[12]
*306 entitled to claim the PRPA's evidentiary privilege in its section 425.4.[13]
For these reasons, while it is possible that Dr. Walther, as an individual, may qualify as a "review organization" under the second sentence of the PRPA's definition of that term,[14] the PRPA does not extend its grant of the evidentiary privilege to that category of "review organization" ' (i.e., credentials review). Individuals conducting peer review are not defined as a "review committee" under the PRPA, even if they qualify as another type of "review organization." As a result, we must conclude that Dr. Walther, as an individual, was not a "review committee" engaging in peer review, and thus MVH is not entitled to claim the PRPA's evidentiary privilege based upon her work as a member of its medical staff.
Finally, we must address the argument presented by both ERMI and MVH that the lower courts erred in refusing to apply PRPA's evidentiary privilege because a hospital's peer review committee may conduct protected peer review activities through an outside entity pursuant to a contract. ERMI insists that the Superior Court ignored "the clear evidence that the information at issue was generated on behalf of [MVH], at the request of [MVH], pursuant to ERMI's contract with [MVH]. " ERMI's Brief at 32 (emphasis in original). MVH similarly argues, "Here, [MVH], unquestionably a 'professional health care provider,' retained an external organization, ERMI, to staff its Emergency Department and to provide, among other services, evaluation of the qualifications and performance of the Emergency Department physicians practicing within its walls." MVH's Brief at 18-19. According to MVH, to the extent that a "professional health care provider" must initiate the peer review process, "that requirement was satisfied when [MVH] entered into the contract with ERMI that included peer review among the services to be provided." Id. at 19. As such, both ERMI and MVH contend that no statutory provision in the PRPA precludes a hospital (like MVH) from entering into a contract with a staffing and administrative services entity (like ERMI) to conduct peer review services for the hospital's peer review committee.
Based upon our review of the certified record, we conclude that MVH and ERMI failed to preserve this issue for appeal to this Court. See Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court). For reason of either strategy or oversight, neither MVH nor ERMI included the contract between them in the record in the trial court proceedings. With respect to MVH, in neither its initial response to the Reginellis' discovery request for production of Dr. Boggs' performance *307 file nor in its motion for reconsideration of the trial court's adverse ruling, did it argue that it had contracted with ERMI to conduct peer review services for the use of its (MVH's) hospital peer review committee. Similarly, in its motion for a protective order, ERMI made no mention of any such contractual provision. To the contrary, ERMI indicated that Dr. Walther created and maintained Dr. Boggs' performance file solely "on behalf of [ERMI]." ERMI further described Dr. Walther's peer review of the ERMI-employed emergency department physicians as "separate" from any peer review efforts conducted by MVH's peer review committee. In direct contradiction to its current "contract" argument, in the trial court ERMI claimed that Dr. Boggs' performance file "has absolutely no relevance to the corporate negligence claim asserted against MVH in this case." If, however, MVH contracted with ERMI to perform peer review services on its behalf, such a contractual provision would be highly relevant to the Reginellis' corporate negligence count against MVH, particularly in response to the allegation that MVH failed to "oversee all persons who practiced medicine within the Hospital's walls." Amended Complaint, 12/1912012, ¶ 26.
Likewise, neither MVH nor ERMI raised the issue in their initial briefs in the Superior Court. While MVH referenced that the two entities were contractually bound together "to provide medical services," it did not argue that a specific provision of the contract between them obligated ERMI (by and through Dr. Walther) to perform peer review services on MVH's behalf.[15] ERMI similarly raised no such argument before the Superior Court, instead continuing to insist that Dr. Boggs' performance file was created and maintained by Dr. Walther solely on behalf of ERMI, and that the performance file was not reviewed by and/or disseminated to MVH's peer review committee. While it now represents to this Court that ERMI performed peer review services on behalf of MVH pursuant to their contractual agreement, ERMI's Brief at 32-35, it offers no explanation for its prior representations to the lower courts that the performance file was created and maintained solely on behalf of ERMI and that it was never disseminated to MVH (as one would expect it would be if ERMI was performing the peer review now at issue for the benefit of MVH).
Even if the issue had been preserved for appeal, we must conclude that it lacks merit.[16] As noted, because the contract *308 between ERMI and MVH was not included in the record before the trial court, it is likewise not included in the certified record on appeal before this Court. As a result, we may not consider it. See, e.g , Commonwealth v. Jordan , 619 Pa. 513, 65 A.3d 318, 335 (2013). For this reason, the certified record here contains no conclusive documentary evidence to establish, one way or the other, whether MVH contracted with ERMI to conduct peer review on its behalf including, in particular, the creation of the performance file that Dr. Walther maintained for Dr. Boggs. ERMI and MVH instead rely heavily upon a snippet of Dr. Walther's deposition testimony in which she indicated that her peer review activities were performed "for the benefit of both [ERMI] and MVH." N.T., 2/5/2014, at 64-66. This testimony, however, was not in response to any question relating either to the terms of the ERMI-MVH contract or the legal relationship between those two entities. Instead, Dr. Walther was merely explaining her understanding of the day-to-day workings of the peer review processes at both ERMI and MVH. Id. In this regard, she tellingly described her work as "internal" to the emergency department and indicated that she only shared her peer review records with MVH's peer review committee when there was a "care issue." Id. at 66. Counsel for MVH repeatedly objected to questions directed to Dr. Walther regarding the terms of the contract, see id. at 49, and when she was permitted to answer, Dr. Walther admitted that she did not "know what their contractual agreement was." Id. at 59.[17]
For these reasons, the order of the Superior Court is hereby affirmed.
Justices Baer, Dougherty and Mundy join the opinion.
Justice Wecht files a dissenting opinion in which Chief Justice Saylor and Justice Todd join.

The American Medical Services Association and the Pennsylvania Medical Society have filed amicus curiae briefs on behalf of ERMI, Dr. Boggs and MVH. The Pennsylvania Association for Justice has filed an amicus brief on behalf of the Reginellis.

Dr. Walther's deposition testimony appears in the original record as Exhibit B to Appellees' Motion for Sanctions and to Recommence the Depositions of Marcellus Boggs and Brenda Walther.

The Reginellis did not seek to compel Dr. Boggs or ERMI to produce those records and/or information.

As their positions are the same, ERMI and Dr. Boggs will be referred to collectively as "ERMI."

The Superior Court granted the appeal as a collateral order pursuant to Rule 313 of the Pennsylvania Rules of Civil Procedure. None of the parties have appealed this ruling.

With respect to MVH, we granted review of the following issues:
1. Whether the Superior Court erred by holding an outside medical provider's peer review proceedings regarding its employees who staff a hospital's Emergency Department under a contract with that hospital are not entitled to protection from disclosure under the [PRPA]?
2. Whether the sharing of peer review records by a third-party medical provider that operates a hospital's Emergency Department with the administration of that hospital constitutes a waiver of peer review protection as to those records?
3. Whether a hospital that contracts with a third-party medical provider to operate the hospital's Emergency Department may claim protection under the [PRPA] for records of peer review proceedings conducted by the medical provider regarding its employees who staff the hospital's Emergency Department?
Reginelli v. Boggs , 636 Pa. 103, 141 A.3d 439 (2016) (per curiam). With respect to ERMI and Dr. Boggs, we granted review of two issues:
1. Whether the Superior Court's holding directly conflicts with previous Superior Court holdings that an outside entity can be appointed or retained by a hospital to conduct peer review and that the review is entitled to protection under the [PRPA]?
2. Whether the Superior Court's holding directly conflicts with the intent of the [PRPA] and this Court's holdings that the provision of peer review materials to the hospital does not constitute a waiver of the [PRPA]?
Reginelli v. Boggs , 636 Pa. 102, 141 A.3d 438 (2016) (per curiam).

The PRPA was enacted in 1974 and last amended in relevant part in 1978 (references to veterinary medicine were added in 1996). Entities similar to ERMI existed at or around this time. See Com., Dep't of Pub. Welfare v. Forbes Health Sys. , 492 Pa. 77, 422 A.2d 480, 481 (1980) (discussing Medicaid reimbursements to "private independent physician groups which contract with hospitals to provide emergency room physician coverage").

At a fundamental level, ERMI misconstrues the scope of the evidentiary privilege created by the PRPA. Contrary to ERMI's contention, the privilege does not apply anytime that an activity consistent with the PRPA's definition of "peer review" occurs. ERMI's Brief at 23-24. Instead, the PRPA strictly limits the evidentiary privilege to the "proceedings and records of a review committee." 63 P.S. § 425.4. A review committee is defined in the PRPA as "any committee engaged in peer review[.]" 63 P.S. § 425.2. Peer review is "a procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers[.]" Id. Accordingly, the PRPA's evidentiary privilege may be asserted only with respect to "proceedings and records of a review committee," and only when one professional health care provider is evaluating the performance of another professional health care provider. Moreover, with respect to discovery requests for the production of documents, the evidentiary privilege in section 425.4 protects from production only those records of a peer review committee that it utilized when it "engaged in peer review." 63 P.S. § 425.2 ; 63 P.S. § 425.4.

For this reason, we disapprove of Troescher and its Superior Court progeny (e.g., Piroli v. Lodico, 909 A.2d 846 (Pa. Super. 2006) in this regard.

Professional "qualifications" would include, for instance, a physician's continuing maintenance of his or her board certifications, and "activities" could include clinical research initiatives, continuing education, service on professional committees or organizations and, more broadly speaking, other qualifications deemed necessary by the hospital. Credentials review permits a hospital to retain, and then maintain, a medical staff of quality professionals.

The General Assembly defined the more expansive term "review organization" for a purpose unrelated to the evidentiary privilege, as section 425.3 provides for various criminal and civil immunities available to persons providing information to a "review organization" (with limited exceptions), and to individuals serving as members of a "review organization." 63 Pa.C.S. § 425.3.

While the title to section 425.4 contains a reference to "review organizations," section 1924 of the Statutory Construction Act provides that titles to statutory sections "shall not be considered to control." 1 Pa.C.S. § 1924. Although titles to statutory sections may in some circumstances be used to aid in the construction of ambiguous statutory language, id. , they will have no effect when the statutory language is unambiguous and thus are not in need of construction. See, e.g., Commonwealth v. Shafer , 414 Pa. 613, 621, 202 A.2d 308, 312 (1964). The reference to "review committee" in the statutory language of section 425.4 is not ambiguous.

For this reason, we must also disapprove of Superior Court decisions to the extent that they hold that credentialing review is entitled to protection from disclosure under the PRPA's evidentiary privilege. See, e.g., Troescher , 869 A.2d at 1022 ; Dodson v. DeLeo , 872 A.2d 1237, 1243 (Pa. Super. 2005).

Whether Dr. Walther performed credentialing work for MVH is not entirely clear from the certified record. At her deposition, she testified that while ERMI recommended physicians to work in the emergency room, it was entirely up to MVH to do the credentialing work to decide whether to accept them as members of the medical staff. N.T., 2/5/2014, at 43-44 ("Q. So the control of the hospital is to either credential them or not? A. "Correct."). On the other hand, with respect to "recredentialing" someone for continuing membership on the medical staff, Dr. Walther described this process as a "joint decision between the hospital and ERMI." Id. at 67-69.

MVH raised this issue for the first time in its reply brief in the Superior Court, arguing that the contract between ERMI and MVH provided for ERMI to conduct peer review functions on its behalf for the emergency room physicians placed there by ERMI. MVH's Superior Court Reply Brief, 1584 WDA 2014, at 1-6. It did so, however, only after the Reginellis attempted, unsuccessfully, to include the ERMI-MVH contract in the certified record before the Superior Court by filing a supplemental reproduced record. See Commonwealth v. Bracalielly , 540 Pa. 460, 658 A.2d 755, 763 (1995) ("An item does not become part of the certified record by simply copying it and including it in the reproduced record").
As this Court has ruled, the opportunity for, and the extent of, a reply brief is limited, as the Pennsylvania Rules of Appellate Procedure make clear that an "appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief." Pa.R.A.P. 2113(a). Therefore, an appellant is prohibited from raising new issues in a reply brief. Commonwealth v. Fahy , 558 Pa. 313, 737 A.2d 214, 219 (1999).

Because it has been waived and no support in the certified record exists to support it, the issue is not presently before us as to whether a hospital may claim the PRPA's evidentiary privilege after entering into a contract with a staffing and administrative services entity to conduct peer review services for use by a hospital's peer review committee. We note that in Yocabet , the Superior Court suggested that, consistent with the PRPA's privilege provisions, a professional health care provider could retain outside entities composed of professional health care providers to perform peer review services. Yocabet , 119 A.3d at 1022. It declined to apply this principle, however, because the Department of Health was not a professional health care provider. Id. The factual predicate in the present case differs from that in Yocabet , since in that case no contract existed between UPMC Presbyterian and the Department of Health for the provision of peer review services (to be performed by professional health care providers employed by the Department of Health). Accordingly, we take no position with respect to this portion of the decision in Yocabet .

In connection with ERMI's motion for a protective order, Dr. Walther also submitted an affidavit in which she represented that "I have no input or firsthand knowledge regarding the contract entered into by my employer, [ERMI], and [MVH]." Motion for Protective Order, 9/22/2014, Ex. D.