J-A06024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF LEONARD P. KRAPPA, DECEASED, BY AND THROUGH HIS ADMINISTRATOR, LEONARD A. KRAPPA, AND MARGARET KRAPPA, INDIVIDUALLY AND IN HER OWN RIGHT | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 822 MDA 2018 |
| MARK LYONS, D.O.; FRANK PIRO, M.D.; JONATHAN C. SULLUM, M.D.; JUAN C. BARRERA, M.D.; JAMES FRANGOS, M.D.; LOUIS DEGENNARO, M.D.; AND COMMUNITY MEDICAL CENTER | : : : : : : : : : : | |
| APPEAL OF: COMMUNITY MEDICAL CENTER | : : | |

Appeal from the Order Entered April 11, 2018
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2012 CIV 581

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                   **FILED MAY 07, 2019**

Appellant Community Medical Center appeals from the order granting

the emergency motion to compel discovery[1] filed by Appellees Estate of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] "[M]ost discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation."  ***Veloric v. Doe***, 123 A.3d 781, 784 (Pa. Super. 2015).  Nevertheless, "An appeal may be taken as of right from a collateral order of [a] . . . lower court."  Pa.R.A.P. 313(a).

Leonard Krappa, deceased, by and through his administrator, Leonard A. Krappa, and Margaret Krappa, individually and in her own right. Appellant claims the trial court erroneously granted the emergency motion to compel, because Appellees sought the production of documents that are privileged under the Peer Review Protection Act[2] (PRPA). We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> [Appellees] initiated this medical malpractice action . . . in January 2012 alleging a delay in the diagnosis of cancer.
>
> In [the] complaint, [Appellees] raised thirteen (13) counts against multiple Defendants. Pertaining to this appeal, Count II asserts a negligence claim against Frank Piro, M.D. with respect to his interpretation of a CT scan in January 2008. Count VII asserts a claim of direct negligence against [Appellant]. Count VIII asserts a corporate liability claim against [Appellant] with respect to the hiring, training, and/or supervising physicians, including Dr. Piro. Count IX asserts a claim of vicarious liability against [Appellant,] alleging [Appellant] is responsible for the actions or inactions of its employees and/or agents, including Dr. Piro. Count X asserts a claim of ostensible agency against [Appellant] with respect to Dr. Piro. In addition, the complaint asserts claims for wrongful death, survival action, and loss of consortium.

---

"A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313 . . . ." *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1016 n.1 (Pa. Super. 2015) (citation omitted).

[2] 63 P.S. §§ 425.1-425.4.

During the course of discovery, [Appellees] sought unredacted copies of [Appellant's] files for Drs. Piro and Sabbar. [Appellant] and Dr. Piro objected to the production and asserted the information requested was privileged pursuant to the [PRPA].

Trial was scheduled to begin on April 9, 2018. On April 5, 2018, [Appellees] filed an emergency motion to compel [Appellant] to produce the unredacted and complete credentialing materials for Drs. Piro and Sabbar. In [the] motion, [Appellees] sought production of unredacted credentialing files,[3] based on the recently decided Pennsylvania Supreme Court decision **Reginelli v. Boggs**, 181 A.3d 293 (Pa. 2018).[4]

Oral argument was heard on Friday, April 6, 2018. [At that time, Appellant asserted that **Reginelli** was inapplicable. Appellant argued that its credentialing committee constituted a "review committee" whose records must remain confidential under the PRPA. Further, Appellant insisted that the performance evaluations in its files satisfied the PRPA's definition of "peer review" materials.] On Monday, April 9, 2018, [the trial] court conducted an *in camera* review of the . . . unredacted credentialing files for both Drs. Piro and Sabbar. Additional oral argument was heard on April 10, 2018. On April 11, 2018, [the trial] court entered an order compelling the production of the unredacted . . . files [generated by Appellant's credentialing committee] pursuant to **Reginelli**.

---

[3] Specifically, Appellees' motion requested

the complete, unredacted credential and personnel files of Drs. Piro and Sabbar setting forth their qualifications or lack thereof, in the materials submitted in support of those applications, the circumstances under which they were hired and the manner in which their employment with [Appellant's] Radiology Department ended and/or was terminated. Additionally, [Appellant] should be directed to produce any memorandum or writing confirming the nature of the relationships between CMC Radiology, Defendant Dr. Piro, Dr. Sabbar, Foundation Radiology and [Appellant].

Emergency Mot. to Compel, 4/5/18, at 12-13.

[4] The Pennsylvania Supreme Court decided **Reginelli** on March 27, 2018.

On May [10], 2018, [Appellant] filed a notice of appeal. On June 22, 2018, [the trial] court entered an order granting [Appellant's] request for a stay pending appeal.

Trial Ct. Op. 7/23/18, at 1-2 (unpaginated).

The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On July 23, 2018, the court filed an opinion pursuant to Pa.R.A.P. 1925(a). The court asserted that Appellees sought to obtain credentialing materials for Drs. Piro and Sabbar and such materials are discoverable under **Reginelli**.

Appellant now presents one question for this Court's review:

Did the trial court err, as a matter of law, in construing **Reginelli** . . . as announcing a blanket rule depriving all previously-protected credentialing committee materials of peer review protection, when the issue of a credentialing committee's review of physician performance was not before the Supreme Court; to the extent the Supreme Court addressed credentialing materials, it limited its discussion to that part of the credentialing process concerned only with factual review of professional qualifications, such as board certifications, and professional activities, such as service on professional organizations; and the Court reaffirmed that the peer review privilege protects the records of any review committee when one professional health care provider is evaluating the performance of another professional healthcare provider?

Appellant's Brief at 4 (quotation marks omitted).

Appellant maintains that the trial court overruled Appellant's "claim of peer review protection for the performance evaluation materials contained in the credential files for Dr. Piro and Dr. Sabbar." **Id.** at 11. Appellant contends that its "credentialing committee records relating to peer evaluations, performance appraisals, and responses to [National Practitioner Data Bank]

- 4 -

queries, for the initial appointment and reappointment of Dr. Piro and Dr. Sabbar, which were generated for quality improvement purposes and maintained exclusively by the committee, fall squarely within the PRPA. . . ." ***Id.*** at 24.

Appellant insists that the Pennsylvania Supreme Court "has consistently held that performance evaluation by a review committee constitutes protected peer review." ***Id.*** at 17. Appellant asserts that ***Reginelli*** "did not question whether performance evaluation constitutes protected peer review, but only whether the performance review in that case was conducted by a qualified review committee." ***Id.*** Further, ***Reginelli*** "did not decide to revoke peer review protection afforded to performance evaluation by a credentialing committee." ***Id.*** at 18.

To the extent ***Reginelli*** discussed the credentialing review process, Appellant states that such discussion amounts to *dicta*. ***Id.*** at 23. Based upon the foregoing, Appellant argues that the trial court "erred as a matter of law in construing ***Reginelli*** as announcing a blanket rule stripping peer review protection from performance evaluations by a credentialing committee." ***Id.*** at 23-24. Appellant concludes that this Court must reverse the order granting Appellees' emergency motion to compel. ***Id.*** at 25.

"Where the issue is the proper interpretation of a statute, it poses a question of law; thus, our standard of review is *de novo*, and the scope of our review is plenary." ***Yocabet***, 119 A.3d at 1019 (quotation marks and citations omitted).

J-A06024-19

The PRPA provides the following evidentiary privilege:

## § 425.4. Confidentiality of review organization's records

The proceedings and records of a **review committee** shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4 (emphasis added).

The PRPA also defines the following pertinent terms:

## § 425.2. Definitions

As used in this act:

**"Peer review"** means the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations.

- 6 -

\*    \*    \*

**"Review organization"** means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a veterinary review committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established by one or more State or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care.  It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto.  It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.

63 P.S. § 425.2.

In **_Reginelli_**, Monongahela Valley Hospital (MVH) contracted with UPMC Emergency Medicine, Inc. (ERMI) to provide staffing and administrative services for MVH's emergency room.  The plaintiff went to MVH's emergency room and received treatment from Dr. Boggs.  Thereafter, the plaintiff pursued a medical malpractice action against Dr. Boggs, MVH, and ERMI.

During discovery, the plaintiff deposed Dr. Walther, an ERMI employee who served as the director of MVH's emergency department and Dr. Boggs' supervisor.  Dr. Walther testified that she prepared and maintained a performance file on Dr. Boggs as part of her regular practice of reviewing randomly selected charts associated with the patients Dr. Boggs had treated.

The plaintiff subsequently filed a discovery request seeking the complete performance file for Dr. Boggs maintained by Dr. Walther. MVH, ERMI, and Dr. Boggs raised various objection to the production of the file, including assertions that it was privileged under the PRPA. Ultimately, the trial court ordered MVH to supply Dr. Boggs' performance file to the plaintiff, and this Court affirmed the trial court's order.

The Pennsylvania Supreme Court granted allowance of appeal to determine whether ERMI and MVH had any entitlement to the PRPA's evidentiary privilege with respect to the performance file. The Supreme Court engaged in statutory interpretation of the pertinent provisions of the PRPA and determined, "the PRPA's evidentiary privilege is reserved only for the proceedings and documents of a **review committee**." ***Reginelli***, 181 A.3d at 304 (citation omitted) (emphasis in original). The ***Reginelli*** Court reasoned:

> the terms "review committee" and "review organization" are not interchangeable, as they connote distinct types of entities under the PRPA. The first sentence of the definition of "review organization" defines the type of entity that constitutes a "review committee," namely, "any committee engaging in peer review." The second sentence, in contrast, contains no reference to peer review, and instead refers to a "hospital board, committee or individual" involved in the review of "the professional qualifications or activities of its medical staff or applicants thereto" by a "hospital board, committee or individual."[fn10] This second category of "review organizations" does not involve peer review, as that term is defined in the PRPA, which is limited to the evaluation of the "quality and efficiency of services ordered or performed" by a professional health care provider. Review of a physician's credentials for purposes of membership (or continued membership) on a hospital's medical staff is markedly different

- 8 -

from reviewing the "quality and efficiency of service ordered or performed" by a physician when treating patients. Accordingly, **although "individuals reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto," . . . are defined as a type of "review organization," such individuals are not "review committees" entitled to claim the PRPA's evidentiary privilege in its section 425.4.**

> [fn10] Professional "qualifications" would include, for instance, a physician's continuing maintenance of his or her board certifications, and "activities" could include clinical research initiatives, continuing education, service on professional committees or organizations and, more broadly speaking, other qualifications deemed necessary by the hospital. Credentials review permits a hospital to retain, and then maintain, a medical staff of quality professionals.

*Id.* at 305-06 (citations and some footnotes omitted) (emphasis added).

Therefore, the *Reginelli* Court indicated that the PRPA does not extend its grant of an evidentiary privilege to materials that are generated and maintained by entities reviewing the professional qualifications or activities of medical staff "*i.e.*, credentials review." *Id.* at 306. Additionally, "the performance file [in *Reginelli*] was not generated or maintained by MVH's peer review committee," and the PRPA's evidentiary privilege did not apply. *Id.* at 296.

Instantly, the trial court conducted an *in camera* review and determined that the files at issue "consist entirely of credentialing materials of Drs. Piro and Sabbar." Trial Ct. Op. at 4 (unpaginated). This Court has conducted its own review of the files, which the parties transmitted under seal with the certified record. Our review confirms the trial court's finding.

Regarding the applicability of the PRPA, the materials in the doctors' personnel files are generated and maintained by Appellant's credentialing committee. The PRPA's protections do not extend to the credentialing committee's materials, because this entity does not qualify as a "review committee." *See Reginelli*, 181 A.3d at 306. Accordingly, the trial court did not err in its interpretation of the PRPA, and Appellant is not entitled to relief on its claim.[5] *See Yocabet*, 119 A.3d at 1019.

Order affirmed. Appellee's application to strike Dr. Piro's brief denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/07/2019

---

[5] In light of our disposition, we deny as moot Appellees' application to strike Dr. Piro's brief.

- 10 -