J-A12027-19

2020 PA Super 36

| | | |
|---|---|---|
| JAMES E. LEADBITTER AND TAMMY M. LEADBITTER, HIS WIFE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| KEYSTONE ANSETHESIA CONSULTANTS, LTD., A CORPORATION, CHRISTOPHER MERCK, D.O., AJOY KATARI, M.D., JOHN P. WELDON, M.D. AND ST. CLAIR HOSPITAL | : : : : : : : : : | No. 1414 WDA 2018 |
| v. | : : : | |
| CARMEN PETRAGLIA, M.D. AND SOUTH HILLS ORTHOPAEDIC SURGERY ASSOCIATES, A CORPORATION | : : : : : : : | |
| APPEAL OF: ST. CLAIR HOSPITAL | : | |

Appeal from the Order Entered September 17, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): G.D. No. 16-10700

BEFORE: BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.: FILED FEBRUARY 12, 2020

Appellant, St. Clair Hospital, appeals from the September 17, 2018 Order granting Appellees', James E. and Tammy M. Leadbitter's, Motion to Compel and directing Appellant to produce the unredacted credentialing file of defendant, Carmen Petraglia, M.D. After careful review, we affirm.

The relevant facts and procedural history are as follows. On June 24, 2014, Dr. Carmen Petraglia, a physician in private practice, applied for an appointment to the medical staff at St. Clair Hospital. On July 28, 2014, Dr. Petraglia applied for orthopedic surgery clinical privileges at St. Clair Hospital. In considering Dr. Petraglia's applications, the hospital's credentialing committee reviewed numerous documents, including the following, which are at issue in this appeal:

1. Professional opinions relating to Dr. Petraglia's competence;

2. Professional Peer Review Reference and Competency Evaluation, which contains evaluations of Dr. Petraglia's performance and prepared by other physicians;

3. Ongoing Professional Practice Evaluation of St. Clair Hospital Summary Report, which contains performance-related data that St. Clair Hospital compiled; and

4. Responses to St. Clair inquiries to the National Practitioner Data Bank ("NPDB").[1]

The credentialing committee recommended that St. Clair Hospital grant clinical privileges to Dr. Petraglia in the Department of Surgery, Section of

_____

[1] The NPDB is a "web-based repository of reports containing information on medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers." About US, National Practitioner Data Bank, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last visited February 4, 2020). Congress established the NPDB as a "tool that prevents practitioners from moving state to state without disclosure of discovery of previous damaging performance." Id.

Orthopedic Surgery.[2]   On September 8, 2014, Dr. Petraglia accepted the appointment.

On November 13, 2014, Dr. Petraglia examined Appellee James Leadbitter at Dr. Petraglia's medical office and recommended spinal surgery. On January 14, and January 15, 2015, Dr. Petraglia performed two spinal surgeries on Mr. Leadbitter at St. Clair Hospital.  Following the surgeries, Mr. Leadbitter suffered a series of strokes, resulting in permanent brain damage, cortical blindness, motor weakness, and impairment of his extremities, which Appellees alleged the negligence of St. Clair Hospital and the other defendants caused.

On January 11, 2017, Appellees filed an Amended Complaint raising claims of negligence and loss of consortium against all defendants, including St. Clair Hospital, and vicarious liability and corporate negligence against St.

_____

[2] "Credentialing is the process by which insurance networks, healthcare organizations, and hospitals obtain and evaluate documentation regarding a medical provider's education, training, work history, licensure, regulatory compliance record, and malpractice history before allowing that provider to participate in a network or treat patients at a hospital or medical facility." The Importance of Medical Professional Credentialing, verywellhealth, https://www.verywellhealth.com/importance-of-professional-credentialing-2317550 (last visited February 4, 2020).  "The companion piece to credentialing is 'privileging,' which is the process of authorizing a licensed or certified healthcare practitioner's specific scope of patient care services. Privileging is performed in conjunction with an evaluation of an individual's clinical qualifications and/or performance." Credentialing and Privileging: Medical Protective Clinical Risk Management Department, Medical Protective, https://www.medpro.com/documents/10502/359074/Credentialing+and+Privileging.pdf (last visited February 4, 2020).

Clair Hospital.[3]  That same day, Appellees also filed a separate negligence action against Dr. Petraglia and South Hills Orthopaedic Surgery Associates, P.C.  On January 27, 2017, the trial court consolidated the two actions.

On March 22, 2017, Appellees served upon St. Clair Hospital a First Set of Interrogatories and Request for Production of Documents seeking, inter alia, "the complete credentialing and/or privileging file for [] Petraglia." Motion to Compel, 8/29/19,[4] at ¶¶ 4-5.  St. Clair Hospital responded to Appellees' Request for Production of Documents by producing only those documents that it determined were discoverable portions of Dr. Petraglia's credentialing file and removing or redacting portions it claimed were privileged.

Following an additional request for production of documents,[5] St. Clair Hospital produced another tranche of documents.  St. Clair Hospital continued to assert, however, that some portions of Dr. Petraglia's credentialing file were privileged and, thus, refused to produce the file in full.

On August 29, 2018, Appellees filed a Motion to Compel production of Dr. Petraglia's unredacted credentialing file, in which it asserted that, pursuant

_____

[3] On January 27, 2017, St. Clair Hospital and the co-defendants filed a Complaint to Join Dr. Petraglia and South Hills Orthopaedic Surgery Associates, P.C. as additional defendants.

[4] The trial court docketed the Motion to Compel on September 18, 2018.

[5] Appellees requested supplemental discovery responses from St. Clair Hospital following the Pennsylvania Supreme Court's decision in Reginelli v. Boggs, 181 A.3d 293 (Pa. 2018), which we discuss infra.

to the Pennsylvania Supreme Court's decision in Reginelli v. Boggs, 181 A.3d 293 (Pa. 2018), they were entitled to the complete, unredacted file. On September 10, 2017, St. Clair Hospital filed a response to the Motion, claiming that the Peer Review Protection Act ("PRPA"), 63 P.S. § 425.1, et seq., and the Healthcare Quality Improvement Act ("HQIA"), 42 U.S.C. § 11101, et seq., shielded them from producing the requested documents.

On September 13, 2018, the trial court held a hearing on Appellees' Motion after which, relying exclusively on Reginelli, supra, it granted the Motion to Compel and ordered St. Clair Hospital to produce Dr. Petraglia's unredacted credentialing file. This timely appeal followed.[6] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

St. Clair Hospital raises the following two issues on appeal:

1. Whether the [t]rial [c]ourt erred and/or abused its discretion in granting [Appellees'] Motion to Compel and compelling production of professional opinions and performance evaluations relating to [] Petraglia's competence and an Ongoing Professional Practice Evaluation of [Appellant], which are protected from disclosure pursuant to the [PRPA]?

_____

[6] "[M]ost discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." Veloric v. Doe, 123 A.3d 781, 784 (Pa. Super. 2015) (quotation marks and citation omitted). Nevertheless, "[a]n appeal may be taken as of right from a collateral order of [a] . . . lower court." Pa.R.A.P. 313(a). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313 . . . ." Yocabet v. UPMC Presbyterian, 119 A.3d 1012, 1016 n.1 (Pa. Super. 2015) (citation omitted).

2. Whether the [t]rial [c]ourt erred and/or abused its discretion in granting [Appellees'] Motion to Compel and compelling production of responses to statutorily-required inquiries of the National Practitioner Data Bank on the part of [Appellant] which are protected from disclosure by federal law, 42 U.S.C. § 11137(b)(1) and 45 C.F.R. § 60.20(a)?

Appellant's Brief at 5.

In its first issue, St. Clair Hospital argues that the trial court erred in not finding that PRPA protected the disclosure of the professional opinions and performance evaluations of Dr. Petraglia that the credentialing committee obtained from other physicians and reviewed before granting hospital privileges to Dr. Petraglia. St. Clair Hospital argues that because these are peer review documents, PRPA precludes their disclosure.

In order to evaluate the argument of St. Clair Hospital, we must analyze the language of PRPA. We start with general principles of statutory construction. "Where the issue is the proper interpretation of a statute, it poses a question of law; thus, our standard of review is de novo, and the scope of our review is plenary." Yocabet v. UPMC Presbyterian, 119 A.3d. 1012, 1019 (Pa. Super. 2015) (quotation marks and citations omitted). We also note that the courts generally disfavor evidentiary privileges. Reginellli, 181 A.3d at 300.

We now turn to the language of PRPA and begin by considering its definition of "peer review." PRPA defines "peer review" as "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers . . . ." Id. (citing 63 P.S. § 425.2). In this case, St. Clair Hospital seeks to

- 6 -

use the PRPA privilege to prevent disclosure of professional evaluations that its credentialing committee considered before granting Dr. Petraglia surgery privileges at St. Clair Hospital. We find that since "professional health care providers"—other physicians—prepared those documents and the documents evaluated the "quality and efficiency of services ordered or performed" by Dr. Petraglia, the documents meet the statutory definition of "peer review" documents. The analysis, however, does not end there. We must also analyze PRPA in light of the Supreme Court's holding in Reginelli.

The Supreme Court in Reginelli interpreted the application of the privilege that PRPA sets forth in terms of, inter alia, the entity that holds the peer review documents. Reginelli, 181 A.3d at 305. In particular, the Supreme Court concluded that the evidentiary privilege only applies to the peer review documents of a "review committee" and not to the documents of a "review organization." Id. at 305-06 (emphasis added).

The Supreme Court interpreted PRPA as creating two distinct categories of entities: a "review committee" and a "review organization." Id. at 305. According to the Reginelli Court, PRPA defines a "review committee" as "any committee engaging in peer review" and a "review organization" as "any hospital Board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto." Id.

Applying this statutory interpretation to the facts of Reginelli, the Supreme Court focused on the fact that the peer review documents at issue

were part of a file created and maintained by an "individual." The Supreme Court concluded that since it was an "individual" who reviewed the documents, and PRPA includes "individuals" in its definition of a "review organization," the PRPA privilege did not apply to those professional evaluations. Reginelli, 181 A.3d at 306. Similarly, this Court recently held that based on Reginelli, PRPA does not shield from disclosure evaluations that a credentialing committee generates. Estate of Krappa v. Lyons, 211 A.3d 869, 875 (Pa. Super. 2019).

Turning to the facts of this case and the peer review documents in question, we are constrained to follow the holdings of Reginelli and Krappa. Reginelli requires that, to determine the applicability of the PRPA privilege, we must consider whether a "review organization" or a "review committee" reviewed the professional evaluations of Dr. Petraglia. Since St. Clair Hospital's credentialing committee is a committee that reviewed the professional qualifications and activities of Dr. Petraglia following his application for hospital privileges at St. Clair Hospital, the credentialing committee is a review "organization." Therefore, the PRPA privilege does not apply to the documents that the credentialing committee reviewed.

We also note that the Supreme Court concluded in a footnote that credentialing review is not "entitled to protection from disclosure under PRPA's evidentiary privilege." Reginelli, 181 A.3d at 306 n.13. The Supreme Court based this conclusion on its observation that "[r]eview of a physician's credentials for purposes of membership (or continued membership) on a

hospital's medical staff is markedly different from reviewing the 'quality and efficiency of service ordered or performed' by a physician when treating patients." Id. at 305. Although the professional evaluations of Dr. Petraglia reviewed by the credentialing committee are different from the type of documents that the Supreme Court considered in Reginelli, the Supreme Court's analysis still requires us to focus on the type of organization that is reviewing the professional evaluations, not whether the documents meet the definition of "peer review" documents.[7]

We share the observation of the Dissent in Reginelli that the Majority's distinction between a review "organization" and review "committee" will result in the "same chilling effect upon free and frank discussions aimed to ensure and improve an appropriate quality of care that PRPA strives to vitiate." Reginelli, 181 A.3d at 315 (Wecht, J., dissenting). This chilling effect will also occur when a credentialing committee is reviewing whether it should grant hospital privileges to a physician with no relationship to the hospital. It is crucial that a committee considering whether to authorize a physician to practice at its hospital has the opportunity to obtain candid and accurate evaluations of the physician before the physician practices at its hospital. The privilege PRPA provides is an important step to encourage other physicians to

_____

[7] In light of the fact that the Supreme Court assumed that documents in a credentialing file are not peer review documents and in this case, the documents at issue are peer review documents, it would be helpful for the Supreme Court to grant allocator and address this issue directly.

provide to hospitals accurate assessments of the performance of their peers.[8]

In its second issue, Appellant claims that the trial court improperly compelled it to produce the NPDB query responses. Appellant's Brief at 43-47. Appellant asserts that the HQIA protects query responses from disclosure. Id.

The HQIA requires hospitals to report information to the NPDB, and to request information from the NPDB when a physician applies for privileges at that hospital and every two years thereafter. Jacksonian v. Temple Univ. Health Sys. Found'n, 862 A.2d 1275, 1278 (Pa. Super. 2004) (citing 42 U.S.C. §§ 11133, 11135). Thus, the purpose for which the NPDB provides the information to hospitals, and the purpose for which the information is used, is credentialing.

The HQIA protects as confidential information reported pursuant to the Act. 42 U.S.C. § 11137(b)(1). The Act also provides, however, that "[n]othing in this subsection shall prevent the disclosure of such information by a party which is otherwise authorized, under applicable State law, to make such disclosure." Id. See also 45 C.F.R. § 60.20(a) ("Information reported to the NPDB is considered confidential[,]" however, "nothing in this section

_____

[8] We note that St. Clair Hospital argues that the holding in Reginelli that a credentialing committee is a "review organization" is dicta because the medical provider in Reginelli was claiming the privilege for peer review documents in a file of an individual, not a credentialing committee. Even if the language in Reginelli is dicta, we are still bound by the Supreme Court's interpretation of PRPA that the privilege does not apply to a "review organization."

will prevent the disclosure of information by a party . . . where disclosure is otherwise authorized under applicable state or Federal law.").

As discussed supra, Pennsylvania law does not protect the professional evaluations of Dr. Petraglia in the file of the credentialing committee. Since the confidentiality provisions of HQIA follow state law, HQIA does not preclude the production of the evaluations of Dr. Petraglia.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2020