J-A18019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE R. BOUSAMRA M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EXCELA HEALTH, A CORPORATION; WESTMORELAND REGIONAL HOSPITAL, DOING BUSINESS AS EXCELA WESTMORELAND HOSPITAL, A CORPORATION; ROBERT ROGALSKI; JEROME E. GRANATO M.D.; LATROBE CARDIOLOGY ASSOCIATES, INC., A CORPORATION; ROBERT N. STAFFEN M.D.; MERCER HEALTH AND BENEFITS, LLC; AND AMERICAN MEDICAL FOUNDATION FOR PEER REVIEW AND EDUCATION, INC., A CORPORATION. | No. 272 WDA 2021 |
| EHAB MORCOS M.D. | |
| v. | |
| EXCELA HEALTH, A CORPORATION; WESTMORELAND REGIONAL HOSPITAL, DOING BUSINESS AS EXCELA WESTMORELAND HOSPITAL, A CORPORATION; ROBERT ROGALSKI; JEROME E. GRANATO M.D.; LATROBE CARDIOLOGY ASSOCIATES, INC., A CORPORATION; ROBERT N. STAFFEN M.D.; MERCER HEALTH AND BENEFITS, LLC; AND AMERICAN MEDICAL FOUNDATION FOR PEER REVIEW AND EDUCATION, INC., A CORPORATION. | |

J-A18019-21

                                          :
                                          :
                                          :
APPEAL OF: MERCER HEALTH AND              :
BENEFITS, LLC AND AMERICAN
MEDICAL FOUNDATION FOR PEER
REVIEW AND EDUCATION, INC.

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-12-003929,
GD-12-003941

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED: DECEMBER 21, 2021**

Appellants, Mercer Health and Benefits, LLC ("Mercer") and American Medical Foundation for Peer Review and Education, Inc. ("American") (collectively, "Appellants") appeal from the January 26, 2021 order that: (1) vacated the April 24, 2019 trial court order; (2) granted the motion to compel discovery filed by George R. BouSamra,[1] M.D. ("Dr. BouSamra") and Ehab Morcos, M.D. ("Dr. Morcos") (collectively, "Appellees"); and (3) permitted use of discovered materials that Appellants claimed were privileged under the Peer Review Protection Act ("PRPA"), 62 P.S. §§ 425.1 – 425.4. We grant Appellants' application for post-submission communication[2] and affirm the January 26, 2021 order.

_____

[1] The record references Dr. BouSamra's last name as "Bou Samra" or "Bousamra" but the correct spelling appears to be "BouSamra."

[2] On August 23, 2021, Appellants filed, with this Court, an application to file a post-submission supplemental brief, arguing there was good cause to permit such a post-submission filing in light of our Supreme Court's recent decision

- 2 -

Our Supreme Court in **BouSamra v. Excela Health**, 210 A.3d 967 (Pa. 2019) previously summarized the factual and procedural history, pertinent to the instant appeal, as follows:

> [Dr. BouSamra] along with his colleague, [Dr. Morcos,] were members of Westmoreland County Cardiology (["]WCC["]), a private cardiology practice located in Westmoreland County[, Pennsylvania].[fn1]  [Dr.] BouSamra and [Dr.] Morcos are interventional cardiologists, who use intravascular catheter-based techniques to treat, among other things, coronary artery disease. Interventional cardiologists utilize catheterization and angiography to measure blood flow through patients' coronary arteries and evaluate the presence of blockages.  If a blockage is severe enough, interventional cardiologists implant a stent - a device which increases the blood flow through the affected artery by widening the narrowed section.
>
>> [Footnote 1  Our Supreme Court relied] on the facts as alleged by [Dr.] BouSamra in his complaint because a factual record ha[d] not yet been established by the trial court.
>
> Westmoreland Regional Hospital is operated by Excela Health (["]Excela["]), a corporation.  As of 2006, approximately 90% of the interventional cardiology procedures at Westmoreland Regional Hospital were performed by WCC.  As a result, most of the income Excela realized from interventional cardiology procedures at Westmoreland Regional Hospital stemmed from WCC's procedures.
>
> In 2007, Excela acquired Latrobe Cardiology [Associates, Inc.] (["]Latrobe [Cardiology]").  Although Latrobe [Cardiology] was a cardiology practice, it did not employ interventional cardiologists. Instead, Latrobe [Cardiology] referred its patients requiring interventional [cardiology] procedures to other cardiologist groups, including WCC.  Because WCC and Latrobe [Cardiology]

in **Leadbitter v. Keystone Anesthesia Consultants, Ltd.**, 256 A.3d 1164 (Pa. 2021).  Appellees filed a response in opposition to Appellants' application on August 24, 2021.

competed for patients, some animosity existed between the practices.

In 2008, Dr. Robert N. Staffen (["Dr.] Staffen["]), a member of Latrobe [Cardiology], complained to Excela that [Dr.] BouSamra and [Dr.] Morcos were not properly referring back to Latrobe [Cardiology] those patients whom Latrobe [Cardiology] had referred to WCC for interventional cardiology procedures. Additionally, some Latrobe [Cardiology] physicians began accusing WCC doctors, particularly [Dr.] BouSamra and [Dr.] Morcos, of performing improper and medically unnecessary stent [procedures]. In light of these accusations, one of the principals of WCC, one of the cardiologists from Latrobe [Cardiology], and the then-Chief Medical Officer of Westmoreland Regional Hospital agreed that Dr. Mahdi Al-Bassam, a skilled interventional cardiologist, would perform a review of WCC's procedures.

On April 26, 2009, Dr. Al-Bassam issued a report concluding that the accusations made against WCC were unfounded. In fact, Dr. Al-Bassam found that the interventional cardiologists demonstrated outstanding skills and judgment, and [he] found no evidence of misuse or abuse of interventional cardiology [procedures]. He further concluded that the procedures performed by WCC involved no increased complications or mortality.

In February 2010, Robert Rogalski (Rogalski) was appointed [Chief Executive Officer] of Excela, at which point he became aware of the acrimonious relationship between WCC and Latrobe [Cardiology]. Seeking to control the market for interventional cardiology in Westmoreland County, Rogalski began negotiating with WCC intending to bring WCC into Excela's network [of health care providers]. The negotiations were ultimately unsuccessful, and[,] in April 2010, WCC rejected any further negotiations.

In June 2010, Excela engaged [Mercer] to review whether physicians at Westmoreland Regional Hospital, including [Dr.] BouSamra, were performing medically unnecessary stent [procedures]. Mercer's review was based on a sampling of interventional cardiology procedure [cases]. The results of the study were critical of [Dr.] BouSamra's work, and concluded that he had performed medically unnecessary interventional cardiology procedures.

[Dr.] BouSamra received the results of [Mercer's] review on December 18, 2010. On January 11, 2011, [Dr.] BouSamra

- 4 -

resigned his privileges at Westmoreland Regional Hospital, hoping to minimize negative professional repercussions resulting from the [review]. Prior to resigning, however, [Dr.] BouSamra had already gained provisional privileges to perform coronary intervention[al procedures] at Forbes Regional Hospital, which served patients in Westmoreland County and eastern Allegheny County[, Pennsylvania].

On February 9, 2011, Excela hired [American] to conduct a more thorough [] review focusing on interventional cardiology procedures performed specifically by [Dr.] BouSamra in 2010. The stated goal of [] American['s] study was to determine if any of the procedures [Dr.] BouSamra performed at Excela's hospital were medically unnecessary.

While Mercer was completing its [] review but prior to American beginning its [] review, Excela contracted with an outside public relations consultant [] to assist Excela in managing the anticipated publicity stemming from the results of the [] review studies. [] On February 23, 2011, American issued a final report to Excela in which it concluded that [Dr.] BouSamra and [Dr.] Morcos regularly overestimated arterial blockages and inappropriately implanted stents.

. . .

On [] March 2, 2011, Excela held a press conference and publicly acknowledged the results of the [] review studies. In its press release, Excela stated that the [] review process had identified 141 patients of [Dr.] BouSamra and [Dr.] Morcos who, in the last twelve months, had received stents which may not have been medically necessary. The press conference received significant media attention the following day.

[Dr.] BouSamra initiated this action by filing a complaint on March 1, 2012, seeking damages for, among other things, defamation and interference with prospective and actual contractual relations.[3] As the matter continued through the phases of

_____

[3] Dr. Morcos filed a similar complaint on March 1, 2012. Defendants' Motion for Consolidation, 4/23/12, at ¶6. On April 23, 2012, the trial court granted a joint motion for consolidation and designated trial court docket number "GD No. 12-003929" as the lead case. Trial Court Order, 4/23/12.

litigation, the parties disagreed as to the scope of discoverable materials.

*BouSamra*, 210 A.3d at 969-971 (citation omitted). To facilitate discovery, the parties stipulated to a clawback agreement and protective order, which preserved the parties' ability to assert a privilege. N.T., 2/5/15, at 27.

On November 4, 2014, Appellees served on all parties a motion to compel discovery and to permit the use of discovered evidence without peer review restrictions ("motion to compel"). Appellees' motion to compel requested, *inter alia*, "disclosure of information generated during and as a conclusion to the reviews undertaken by [Mercer and American]." Appellees' Motion to Compel, 10/9/15, at ¶7.[4] Appellees requested disclosure despite

_____

[4] We note that although the parties served and filed numerous pleadings in this litigation, the trial court failed to docket, untimely docketed, or failed to place in the record certain pleadings. *See* Joint Stipulation to Correct or Modify the Record, 4/5/21, at ¶3 (stating, "Mercer and [American] became aware that certain pleadings, which are related to the issues on appeal, were served on the parties and the [trial court] but [were] not filed and docketed in the trial court record"). For example, Appellees' motion to compel, as discussed *supra*, was served on all parties on November 4, **2014**, but was not timestamped and docketed until October 9, **2015**. Accordingly, this Court may refer to the presentment or service date of a filing or cite to the reproduced record ("R.R.") even if a filing does not exist in the certified record or if a date reflected on the docket appears inaccurate. *See* Pa.R.A.P. 1921 *Note* (stating, "consistent with [our] Supreme Court's determination in *Commonwealth v. Brown*, [] 52 A.3d 1139, 1145 n.4 ([Pa.] 2012) [] where the accuracy of a pertinent document is undisputed, [an appellate court] could consider that document if it was in the [r]eproduced [r]ecord, even though it was not in the record that had been transmitted to the [appellate court]"). "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials." *See* Rule 1921 *Note*.

acknowledging that "all defendants [] contended that the reports, notes and work papers, and any communications by the reviewers and review coordinators of Mercer and [American] are not discoverable [or,] even if disclosed to date in [] discovery, are, nonetheless, subject to the [PRPA evidentiary privilege.]"[5]  ***Id.*** at ¶5.  Appellees argued that the requested materials were subject to disclosure since Mercer's and American's reviews were not peer reviews or, alternatively, that if their reviews were peer reviews,

_____

[5] The evidentiary privilege afforded by the PRPA is set forth at 63 P.S. § 425.4 as follows:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, [t]hat information, documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4.

any PRPA evidentiary privilege was waived when Excela publicly disclosed the findings of those reviews. *Id.* at ¶¶19-63. Appellees requested,

> [a]n order [] declaring that[:] (a) peer review protection did not apply to the Mercer and [American] reviews [or, in the alternative, that] peer review protection was waived under the circumstances; (b) []Mercer, [American,] and Excela shall respond to the discovery requests of [Appellees]; and (c) Mercer and [American] reviewers and agents shall respond in oral depositions without claim of peer review protection.

*Id.* at 21.

On February 5, 2015, the trial court entertained argument on Appellees' motion to compel. On July 1, 2015, the trial court denied Appellees' motion to compel, stating,

> At the time this [motion to compel] was filed, [Excela] had not turned over all documents which [Appellees] sought that were in Excela's possession, custody, or control. It had apparently withheld documents in its possession, custody, or control on the ground that they are protected by peer review.
>
> Following the filing of the [motion to compel], Excela produced all documents within its possession, custody, or control covering how the physicians conducted their reviews.
>
> Through this [motion to compel, Appellees] seek[] backup documents prepared by the physicians conducting the reviews [for Mercer and American] that were never furnished to Excela. [Appellees] also seek[] to depose these physicians in order to obtain information that was never furnished to Excela regarding how the reviews were conducted and how they arrived at their conclusions.
>
> Discovery is governed by a proportionality standard which requires a [trial] court to consider the relevance of the information sought, and the burden imposed on the party from whom discovery is sought.

> In [a] case [such as this where] the only causes of action are the intentional interference with a contractual relation and defamation, the discovery of information not known to Excela is, at best, of very marginal benefit to [Appellees]. This is so because the issue before the fact-finder will be whether Excela, based on information it had obtained and had not obtained, had sufficient justification to have made those statements [at the press conference.]

> [S]tatutory protections are afforded physicians evaluating medical care provided by other medical providers in order to encourage physicians to participate in evaluations. In this case, the discovery which is sought is time-consuming and, at best, of marginal relevance. Thus, in balancing the interests of the physicians who participated in the evaluations and the interests of [Appellees], I conclude that the request for discovery of information not known to Excela is not subject to discovery.

Trial Court Memorandum and Order, 7/1/15, at 3-4 (citations omitted). In other words, the trial court denied Appellees' motion to compel because the documents they sought in discovery were "marginally relevant" to Appellees' causes of action. *Id.* The trial court, however, did not address the issue of whether the documents were subject to the PRPA evidentiary privilege. *Id.*

On July 21, 2015, Appellees filed a motion for clarification or reconsideration of the trial court's July 1, 2015 order, requesting the trial court provide a ruling on the applicability of the PRPA evidentiary privilege. *See* Appellees' Motion for Clarification or Reconsideration, 7/21/15, at 8.[6] That same day, the trial court denied Appellees' motion for clarification or reconsideration. Appellees appealed from the July 1, 2015 order to this Court,

_____

[6] Appellees served a copy of the motion for clarification and reconsideration on all parties on July 7, 2015. *See* Appellees Motion for Clarification and Reconsideration, 7/21/15, at Certificate of Service.

which subsequently quashed the appeal as interlocutory on December 19, 2016. *BouSamra v. Excela*, 2016 WL 7340302 (Pa. Super. Filed December 19, 2016) (unpublished memorandum) (holding that, when a trial court denies a motion to compel the production of documents, the order in question is not appealable as a collateral order under Pa.R.A.P. 313(a) but, rather, is considered an unappealable interlocutory order).

Fast-forward several years, on August 29, 2018, Appellees filed a motion challenging the peer review privilege protection, a motion to compel the production of certain documents, and a motion to compel the identification of documents claimed to be protected by the PRPA evidentiary privilege.[7] *See* Stipulation to Correct or Modify Record Pursuant to Pa.R.A.P. 1926, 4/5/21, at ¶3(a); *see also* Trial Court Memorandum Opinion, 4/23/19, at 1; Appellees' Brief in Support at R.R. 462(b)-562(b). On April 24, 2019, the trial court denied Appellees' motion challenging the peer review protection and their motion to compel production of certain documents and granted their motion to compel the identification of documents claimed to be protected by the PRPA evidentiary privilege.[8] Trial Court Order, 4/24/19. The April 2019 order held that: (1) Excela, a professional health care provider as defined by the PRPA,

---

[7] A copy of Appellees' motion challenging the peer review privilege protection, motion to compel the production of certain documents, and motion to compel the identification of documents claimed to be protected by the PRPA evidentiary privilege is not part of the certified record. A brief in support of the same, however, does appear in the certified record.

[8] The judge who entered the orders in July 2015 retired. Therefore, a different judge entered the April 2019 order.

waived its evidentiary privilege against disclosure when it held a press conference disclosing information contained in the Mercer and American reports; and (2) Mercer and American were peer review committees under the PRPA and that each validly invoked their own evidentiary privileges under the statute. Trial Court Opinion, 4/23/19, at 4-5.[9] In its April 2019 opinion, the trial court reasoned that,

> Mercer and [American] **acted as peer review committees**, pursuant to [their] contract[s with] Excela[,] a professional health care provider. Therefore, **the privilege is clearly held by Excela because it is a professional health care provider**. While [American] and Mercer are, in and of themselves, not professional health care providers, their roles in these peer reviews are conducted as contractual peer review committees for Excela and, therefore, **they inure to the benefit of Excela's status as a professional health care provider**. Accordingly, the [trial] court concludes that the statutory language extending the peer review privilege protection only to professional health care providers is broad enough to encompass the reviews conducted by Mercer and [American] in the present case.

*Id.* at 4 (extraneous capitalization omitted, emphasis added). The April 2019 trial court opinion concluded that because Mercer and American acquired their own evidentiary privileges under the PRPA as peer review committees, "Excela's waiver [of its privilege] did not constitute a waiver on behalf of Mercer [or American]." *Id.*

---

[9] A review of the trial court docket demonstrates that the trial court order was filed on April 24, 2019. The trial court opinion accompanying the order was filed on April 23, 2019.

- 11 -

On April 16, 2020, Appellees served on all parties a motion to compel discovery and to permit the use, as evidence, of documents based upon a waiver of the PRPA evidentiary privilege. **See** Appellees' Motion to Compel, 10/5/20.[10] Appellees asserted that,

> The privilege logs of one or all of the [parties] essentially claims privilege to all the documents related to the subject of the Mercer and [American] reviews, including documents not part of the "proceedings and records" of the review, such as (a) original source material submitted for review, and (b) communications about how [the] reviews should be used.

**Id.** at ¶8. Appellees argued that in light of our Supreme Court's then-recent decision in **Reginelli v. Boggs**, 181 A.3d 293 (Pa. 2018), the April 2019 order created "an irreconcilable conflict and a manifest injustice" that "cannot stand as the law of this case[.]" **Id.** at ¶30. Appellees asserted that the April 2019 order permitted Mercer and American to invoke an evidentiary privilege under the PRPA, which, in Appellees' view, Mercer and American did not independently possess under **Reginelli**, **supra**. Appellees' Motion to Compel, 10/5/20, at ¶39. On the strength of this contention, Appellees maintained that Mercer and American could not validly invoke, or resurrect, an evidentiary

---

[10] Appellees' motion to compel was served on April 16, 2020, but was not filed with the trial court until October 5, 2020. **See** Trial Court Order, 11/13/20 (stating, the trial court "is in the process of reviewing [Appellees'] October 5, 2020 motion to compel discovery and to permit [the] use of discovered evidence without peer review protection" (extraneous capitulation omitted)).

privilege that Excela waived through public disclosure. Appellees requested the trial court issue an order that:

[1.] decides with clarity whether the Mercer and [American] reviews were peer review[;]

[2.] decides with clarity whether Excela waived its presumptive right to confidentiality in the Mercer and [American] reviews [and whether Excela] is the sole entity [that] can claim or refuse to claim [PRPA] protection[;]

[3.] rules that Mercer and [American] are not professional health[ ]care providers [but, rather,] were engaged as agents under [] contract[s with] Excela [and, therefore,] do not have a separate and independent right to claim peer review protection[; and]

[4.] declares that the [April 2019 order] is not the law of the case because it is erroneous and creates a manifest injustice and an irreconcilable conflict between the [defending parties,] which can be used to override Excela's waiver[] or refusal to claim [PRPA] protection.

*Id.* at ¶40.

On January 26, 2021, the trial court vacated the April 2019 order and granted Appellees' motion to compel discovery and to permit the use of discovered evidence without PRPA privilege.[11] Trial Court Memorandum Order, 1/26/21, at 12. The January 2021 order determined that Mercer and American were not entitled to peer review status under the PRPA and, therefore, did not acquire separate evidentiary privileges under the statute. *Id.* at 8-9. Pursuant to its reading of the PRPA, the January 2021 trial court

---

[11] The judge who entered the April 2019 order was no longer serving on the trial court. Therefore, the January 2021 order was entered by a third judge assigned to this case.

- 13 -

concluded that Excela waived the sole, applicable evidentiary privilege through public disclosure. *Id.* at 9. The January 2021 trial court discerned that, "the [PRPA] privilege is held by the [professional] health[ ]care provider and is only extended to entities such as Mercer and [American] when retained for the purpose of peer review." *Id.* at 8. The January 2021 trial court further explained, through its artful analogy to an umbrella, that Mercer and American did not have their own independent evidentiary privileges to waive but, rather, stood "under [Excela's privilege] umbrella keeping them protected and dry." *Id.* at 8-9. The January 2021 trial court opined that, "when [a professional] health[ ]care provider waives the privilege – said privilege disappears in its entirety. It is illogical to contend [a] third-party reviewer somehow retains a privilege it [] never independently held in the first instance." *Id.* at 9. Implicit in the January 2021 trial court's findings was that neither Mercer nor American constituted a peer review committee under the PRPA. This appeal[12] followed.[13]

Appellants raise the following issues for our review:

---

[12] Appellants' single notice of appeal from a single order entered at the lead docket number in a consolidated civil matter does not preclude this Court's appellate jurisdiction. *See Always Busy Consulting, LLC v. Babford & Co., Inc.*, 247 A.3d 1033, 1043 (Pa. 2021) (holding that, filing a single notice of appeal from a single order entered at the lead docket number for consolidated civil matters where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims[,] and issues, does not" preclude appellate jurisdiction).

[13] The trial court did not order Appellants to comply with Pa.R.A.P. 1925(b).

- 14 -

1.   Whether [the January 2021 trial court] was procedurally barred from granting [Appellees'] third motion to compel because [two prior trial court orders] had already denied the same relief [] and this Court had [previously] ruled that any challenge to [the July 2015] order had to be made after the completion of the trial court proceedings?

2.   Whether [the January 2021 trial court] failed to justify a departure from the law of the case doctrine when [it] ignored the applicability of [the July 2015 trial court's] ruling about the proportionality of [Appellees'] requested discovery, dismissed this Court's procedural instructions on how [Appellees] should proceed, and merely disagreed with [the April 2019 trial court's] analysis of the PRPA instead of showing that "manifest injustice" would occur if [the April 2019 order] were allowed to remain in place?

3.   Whether the PRPA applies to the peer review documents of Mercer and [American] and prevents [Appellees] from obtaining them through discovery?

Appellants' Brief at 5-6.

Preliminarily, we address our jurisdiction to review the January 2021 order, which, *inter alia*, granted Appellees' motion to compel. ***See S.C.B. v. J.S.B.***, 218 A.3d 905, 912 (Pa. Super. 2019) (stating that, "[s]ince we lack jurisdiction over an unappealable order it is incumbent on [this Court] to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order" (citation, original quotation marks, and original brackets omitted)); ***see also*** Appellants' Brief at 5 ¶1 (stating, "this Court [previously] ruled that any challenge to [the July 2015] order had to be made after the completion of the trial court proceedings").

Pennsylvania Rule of Appellate Procedure 313 permits an appeal to be "taken as of right from a collateral order of a trial court[.]" Pa.R.A.P. 313(a).

A collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."  Pa.R.A.P. 313(b).  Pennsylvania courts have long-held that a trial court order rejecting the assertion of a privilege and requiring the disclosure of documents constitutes a collateral order and is immediately appealable under Rule 313(a). **See Leadbitter**, 256 A.3d at 1168 (permitting an appeal of an order rejecting the assertion of the PRPA evidentiary privilege and requiring the disclosure of documents); **see also Reginelli**, 181 A.3d at 298 n.5 (permitting a collateral appeal of an order compelling the production of documents purportedly privileged under the PRPA); **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1016 (Pa. Super. 2015) (finding this Court had jurisdiction over an order compelling a party to produce materials allegedly protected by the PRPA); **Commonwealth v. Flor**, 136 A.3d 150, 155 (Pa. 2016) (stating, "discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313").  Therefore, we find Appellants' jurisdictional challenge to be without merit.[14]

---

[14] This Court previously quashed Appellants' appeal of the July 2015 order because that order **denied** Appellants' motion to compel discovery and, therefore, was interlocutory.  **See BouSamra**, 2016 WL 7340302, at *3.  There, this Court recognized that jurisdiction exists over a discovery order

The remainder of Appellants' issues, *in toto*, ask this Court to vacate the January 26, 2021 order, claiming that the January 2021 trial court was bound, under the coordinate jurisdiction rule, to a prior reading of the PRPA espoused by a different trial judge in a ruling issued on April 24, 2019. Statutory interpretation and application of the coordinate jurisdiction rule involve questions of law and, as such, our standard of review is *de novo*, and our scope of review is plenary. **Zane v. Friends Hosp.**, 836 A.2d 25, 30 n.8 (Pa. 2003); **see also Reginelli**, 181 A.3d at 299-300; **Yocabet**, 119 A.3d at 1019.

The "law of the case" doctrine encompasses "a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995). One such rule is the "coordinate jurisdiction rule," which embodies the principle that "upon transfer of a matter between trial [courts] of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." **Id.** (citations omitted). Departure from the coordinate jurisdiction rule is permitted only in exceptional circumstances, such as, "where the prior holding was clearly erroneous and would create a manifest injustice if followed." **Id.** at 1332; **see also Zane**, 836 A.2d at 29

_____

under Rule 313 "when a party has been compelled to reveal materials in which any type of privilege, including the peer review privilege purportedly at issue in this appeal, has been asserted." **Id.**

(stating, "[t]his general prohibition against revisiting the prior holding of a [trial court] of coordinate jurisdiction, however, is not absolute"). A prior holding is "clearly erroneous" if adherence to the order permits "an inequity to work on the party subject to the order" and allows an action to proceed "in the face of almost certain reversal on appellate review." *Zane*, 836 A.2d at 29. A prior holding creates a "manifest injustice" if "adhering to the prior holding would be, in essence, plainly intolerable." *Id.* at 30.

To begin, it is important to recognize several key-principles which underlie the enactment of the PRPA. Our Supreme Court in *Leadbitter*, *supra*, summarized the purpose of the PRPA as follows:

> [T]he enactment [of the PRPA] stems from the dual observations that: the practice of medicine is highly complex and, as such, the medical profession is in the best position to police itself; and, the profession's self-regulation is accomplished, at least in part, through a peer-review mechanism undertaken to determine whether a particular physician should be given clinical privileges to perform a certain type of medical activity at a hospital[.] The purpose of this privilege system is to improve the quality of health care[.] Thus, it is beyond question that peer review committees play a critical role in the effort to maintain high professional standards in the medical practice[.]
>
> Against this background, the PRPA is designed to foster candor and frankness in the creation and consideration of peer-review data by conferring immunity from liability, as well as confidentiality - all with the objectives of improving the quality of care, reducing mortality and morbidity, and controlling costs. [T]he PRPA is an act providing for the increased use of peer review groups by giving protection to individuals and data who report to any review group[.] These types of protections are viewed as helpful in fostering effective peer review because of the perceived reluctance of members of the medical community to criticize their peers and take corrective action.

*Leadbitter*, 256 A.3d at 1168-1169 (citations, ellipsis, original brackets, and original quotation marks omitted). With this background in mind, the PRPA defines "peer review" as "the procedure for evaluation **by professional health care providers** of the quality and efficiency of services ordered or performed by other professional health care providers[.]" 63 P.S. § 425.2 (emphasis added). A "professional health care provider" is defined as "individuals or organizations who are approved, licensed[,] or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth[.]" *Id.* (including in the list of professional health care providers, *inter alia*, a physician, an administrator of a hospital, and a corporation operating a hospital). A "review organization" is defined as

> **any committee engaging in peer review** [(the definition goes on to list several examples of committees engaged in peer review)] to gather and review information relating to the care and treatment of patients for the purposes of[:] (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee[,] or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes[,] or other health care facilities.

*Id.* (emphasis added). While the PRPA's evidentiary privilege specifically states that it protects the proceedings and records of **a review committee** from discovery or introduction into evidence, the PRPA does not define the term "review committee." *See id.*; *see also* 63 P.S. § 425.4. Our Supreme

- 19 -

Court, however, has defined "review committee" as "any committee that undertakes peer review[.]" **Leadbitter**, 256 A.3d at 1176; **see also Reginelli**, 181 A.3d at 303 n.8 (defining "review committee" as "any committee engaged in peer review").

Here, Mercer and American are not professional health care providers because they are not corporations that operate hospitals within the Commonwealth, and they have put forth no evidence that they are "approved, licensed, or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth." **See** 63 P.S. § 425.2. While both Mercer and American may offer "peer review services," their services may not be considered "peer review" under the PRPA unless their evaluation procedures are conducted by a professional health care provider. **See Yocabet**, 119 A.2d at 1024; **see also Ungurian v. Beyzman**, 232 A.3d 786, 799 (Pa. Super. 2021) (reiterating that, for the PRPA privilege to apply, the peer review must have been conducted by a professional health care provider). Because neither Mercer nor American are professional health care providers, neither entity can engage in peer review activity as defined by the PRPA and our Supreme Court's interpretive case law, and, as such, neither entity can be designated a "review committee." **See Leadbitter**, 256 A.3d at 1176 (defining a review committee as a committee that undertakes peer review). Since neither Mercer nor American meet the criteria for a "review committee," neither entity is entitled to its own independent evidentiary privilege under the PRPA.

Excela, however, is a "professional health care provider" because it is a corporation operating a hospital under the laws of the Commonwealth of Pennsylvania. **See** 63 P.S. § 425.2 (defining a professional health care provider as, *inter alia*, a corporation operating a hospital under the laws of the Commonwealth of Pennsylvania). In order to perform a peer review of the quality and efficiency of services ordered or performed by Dr. BouSamra or Dr. Morcos, both of whom qualify as professional health care providers under the PRPA (**see id.**), Excela, as a professional health care provider, engaged the services of Mercer and American as part of its evaluation procedure.[15] Mercer and American served as consultants or analysts tasked with reviewing hundreds of patient records and compiling their findings for the benefit of Excela's peer review of Dr. BouSamra and Dr. Morcos. Stated another way, Mercer and American were part of Excela's peer review "procedure of evaluation." Mercer and American did not actually determine the outcome of

_____

[15] The preliminary findings of Mercer's review of the services performed by Dr. BouSamra and Dr. Morcos were presented to Excela's chief executive officer, the co-chairs of the Board Quality Committee, and the president of the medical staff. **See** Appellees' Motion to Compel Directed to Mercer and American, 7/13/15, at Exhibit B. Excela stated that "an investigation into this matter has not yet been triggered[ and that a] decision on whether to initiate an investigation will be based, among other things, on the review by [American.]" **Id.** Excela described Mercer's review as "incorporate[ing] clinical judgment and documentation into their assessment" of the services provided and "addresses the issues of physician competency." **Id.** at Exhibit C. Excela described American's review as "focus[ing] on evidence of fraud and abuse" stemming from possible overpayments [from patients] as a result of medically unnecessary procedures. **Id.**

the peer review in the sense that Excela, as the professional health care provider conducting the peer review, was free to accept or reject any, or all, of the findings contained in the reports. As such, Excela, as the professional health care provider conducting the peer review, held the evidentiary privilege afforded to peer review proceedings and peer review records under the PCRA. *See* 63 P.S. § 425.4. Once Excela waived its privilege by conducting a press conference and disclosing its accepted findings, the privilege no longer existed, and the peer review proceedings and peer review records were open to discovery and subject to introduction at judicial proceedings. In contrast, as stated *supra*, Mercer and American are not professional health care providers as defined by the PRPA, cannot engage in peer review activity, and, as such, cannot be designated "review committee[s]." *See Leadbitter*, 256 A.3d at 1176. Therefore, neither Mercer nor American hold their own

evidentiary privileges under the PRPA.[16]  Any protection from disclosure that was afforded to Mercer and American is "under the umbrella" of Excela.[17]

Therefore, the January 2021 trial court had grounds to revisit the April 2019 trial court ruling because that decision was "clearly erroneous" and

_____

[16] This Court in **Yocabet**, **supra**, held that, "[a]n external committee formed or retained by a professional health care provider to conduct peer review" could qualify as a "review organization" **if** the external committee were composed of professional health care providers.  **Yocabet**, 119 A.3d at 1024. In the instant case, Appellants offered no evidence that the individuals or entities that conducted the evaluation of medical records were "professional health care providers" as defined by the PRPA, specifically that they were "approved, licensed[,] or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth [of Pennsylvania]." 63 P.S. § 425.2.  Rather, Appellants stated, "Mercer contracted with physician specialists **from across the country** to evaluate the randomly selected cases."  Appellants' Brief at 10, 37.  Appellants stated, "[e]xpert cardiologists retained by [American] reviewed records and films of [Dr. BouSamra's and Dr. Morcos's] patients to conduct a peer review[.]"  Appellants' Brief at 11. Appellants indicated, and the record supports, that American utilized physicians who were licensed by states other than the Commonwealth of Pennsylvania.  **See** Appellees' Motion to Compel Directed to Mercer and American, 7/13/15, at Exhibit C.  Therefore, neither Mercer nor American were a "review organization" under the PRPA.  **See Yocabet**, 119 A.3d at 1024.

[17] The PRPA privilege afforded to Excela as part of its peer review is not eviscerated when the professional health care provider, as part of its peer review process, contracts with an outside entity to review documents, analyze data, and compile a report of its findings for the benefit of the peer review committee or peer review organization.  **See Yocabet**, 119 A.3d at 1024 (stating that peer review procedures for evaluation can be performed by outside entities at the behest of the professional health care provider); **see also Reginelli**, 181 A.3d 306 (declining to address, on grounds of waiver, whether the PRPA privilege is eliminated when the professional health care provider, as part of the peer review process, contracts "with a staffing and administrative services entity [] to conduct peer review services").  In the case *sub judice*, waiver through public disclosure defeated Excela's evidentiary privilege under the PRPA, not its entry into third-party contracts for assistance in the peer review process.

"reversal was certain" for the reasons discussed *supra*. Hence, it would be a manifest injustice to continue to adhere to the April 2019 ruling.

Application for Post-Submission Communication granted. Order affirmed.

Judge Musmanno joins.

Judge Nichols files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021